Okay, Mr. Sutter. May I please the court? When this court reversed the district court almost five years ago on its findings of legal correctness and abuse of discretion, it sent the case back to determine only the underpayment claims of North Cypress, the violations of ERISA, and the violations of any breaches of duties to the members who we are asking these for. It also stated at that time that on a truncated record, it could not state if there was legal correctness, but there were strong arguments that the interpretation of Cigna of this exclusion was not legally correct. Why was it truncated? There are only two things that were not decided prior to the time we got to the Fifth Circuit almost five years ago. That was, did Cigna apply the exclusion, charges which you're not obligated to pay, equally to in-network providers' claims? And two, there was a dispute whether or not Cigna had a conflict of interest in the contingency fees that it earned. We went back to the district court after that when the panel specifically instructed the district judge exactly how and what questions and what inquiries you make to determine legal correctness. At that time, there were only three things we had to do for discovery on this truncated record. Go to New York and find out if in-network members were, the exclusion was applied to them identically. And number two, did Cigna make money off its protocol, a conflict in other words. And third, the other thing we looked at, futility of an appeal. And what we found out when we got to New York, what we surmised before, and which had never come up until Judge Higginbotham raised it, is that Cigna did not apply the protocol and the exclusion to in-network providers. Cigna also made $8.2 million in contingency fees off the protocol that it applied. Now, they claim we did turn off the cost containment program, but it only went down $977,000. They still made $3.55 million because they have three different funnels that they can use for cost containment programs. They still kept two of them on. So we came back to the district court at that time. My position was, we don't need summary judgment. Let's go directly to trial to determine damages. Cigna wanted a summary judgment, as the record indicates, and the court had a summary judgment schedule. At that time, the court came back and found and followed exactly what the mandate was of the appellate court, was to ask the question, what does a reasonable average plan member believe this exclusion does mean? Does it mean that if he doesn't pay 100% of his co-pay for out-of-network, he has no insurance coverage at all? As Judge Higginbotham said, to reiterate, does he believe that he has no insurance coverage? Then you have to look at conflicts, abuse of discretion, et cetera. When we got back, the court found that there was a great deal of evidence on summary judgment that Cigna's primary motivation was not to root out fee giving, but rather was to force North Cyprus into an in-network contract, which they failed to do during the first three months of negotiations for an in-network contract. The court also found there was strong evidence that Cigna acted in bad faith, that it had deliberately targeted North Cyprus with this pilot program. And the evidence that came out was very strong, because this is the first time we've had this type of discovery. 1.7 million pages of documents exchanged, 27 depositions. And what we found out at that time, and by that time Cigna began to argue if you go back to the appellate court the first time five years ago, you don't see much about Kennedy, the Seventh Circuit case. It's not discussed in that opinion. But by the time we got back to the district court, the position that Cigna took is that we relied on Kennedy, a Seventh Circuit case back in 1991 that said that if you don't collect all the patient responsibility, that's what you're going to get paid when you make your claim to the insurance company, one claim from a chiropractor, which was subsequently modified by the Trustmark case in 2000 by the Seventh Circuit saying, but if the individual incurs the expense. And here we clearly, the members incurred the expense, even the Fifth Circuit found. Well, let's cut here, let's shorten this a tiny bit and say, but you've got the Humble case. Okay. Well, what the Humble case has done, and that's what happened, because the court came in and made all the findings under, I think, the law of the- No, you were sandbagged by the Fifth Circuit. Well, no, not exactly. Because if you look at the Humble case, Judge Jones, you don't see the evidence that we have in this case of the bad faith. Because the issue in the Humble case was, was it legally correct? And they made the argument there they had relied upon Kennedy. And in this case, they did not rely upon Kennedy because their protocol began to be made in 2007 through 2008. If you look at it very carefully, if they had been relying on Kennedy in our case, they would have the first day said, we're paying you zero dollars because we don't believe you collected 100% of the patient responsibility amounts. And what happened during that two-year period where they accepted our charge master rates and paid was this. They went back and forth. And one of the things they said, the legal counsel said, if we pay nothing under this situation, it smacks of a lack of genuine effort to interpret this exclusion. The other things that you found out is they even said before they tripped or pulled the trigger, they said that we ought to be concerned about what we're doing because we're applying this exclusion differently to the out-of-network providers than to others. Let me, let me draw an analogy to you. When we, when we take into, when we have a Fourth Amendment case, our duty is to determine whether the law enforcement people objectively acted in violation of search and seizure rights. And it doesn't matter what their intent was. The Supreme Court has put a heavy premium on uniform construction of policies under ERISA for very good reason, which is to encourage the development of plans, the maintenance of plans, and for the ultimate benefit of, of employees. And here, what I'm suggesting is intent may have been bad, but you have a venerable opinion saying that this language is permissibly interpreted in the way they did it. Then you have a Fifth Circuit follow-on which says this is not an abuse of discretion, this interpretation. So what you're asking us to do is walk precisely down the path of, of interpreting the contract in such a way that we're going to have variation between the Fifth Circuit and the Seventh Circuit. But at the same time, the reason the Umbel case went from the legally correct to the abuse of discretion because they could determine that there was no abuse of discretion. That's why they skipped that first step, or that panel did. In this case, they did not skip that first step because they could see that there was an abuse of discretion. And that makes the difference in this one completely different. Because they clearly had an abuse of discretion, and the problem that you also have is what does the average plan participant believe that this means? Because if you look at the record, Judge Jones, on this particular case, after we did the 2014 argument before this court, Cigna went out and amended, amended this exclusion. It expanded it from 32 words to 189 words, 157 words. And what they put in there is exactly what they argued in their protocol, that if you don't pay 100 percent, we have the discretion of not paying this coverage. And so that, that was not in Umbel. We did not have that type of evidence. Now, we submitted that to the district court and as I put in the brief, the district court said, well, that's a Rule 407 evidence, subsequent remedial repair. Well, it can't be because contracts do not come under Rule 407 under the Duesenberry case from the Supreme Court, and a policy and a plan is a contract. The subsequent remedial repair only goes to the issue of culpability and causation. It has not jumped to that second step of lack of good faith and the conflicts of interest that they had at that point when you have that type of evidence that's been submitted. And none of that was ever submitted in the... So how, if you're, if you were on, up here instead of down behind the, the bench, how would you write an opinion to get, to distinguish the Humbel case? I would have to... No, wait. I mean, you have the exact same language in the plan, and you have, is it, is it, are you going to distinguish it on the intent, or what? You would have to distinguish it on the facts, because they spent 22 months, if they truly believed that, and, that that's what that exclusion meant, you would not have had 22 months of seven departments and dozens of employees trying to figure out a way not to make 2921 claims. None of that was brought up in Humbel 1. And if I was sitting in your position, the position that I would take, that is distinguished, because Humbel didn't have before it all of the evidence of what really went on and what transpired with regard to that exclusion, and the fact that they amended that exclusion. Even though the district court wouldn't accept that, they amended it, because they knew that's not what it meant. And the other thing that you have to say is, we went through this five years ago, and then the question is, what was the purpose of North Cyprus versus Cigna? And Judge Higginbotham, L. Rod, and Stewart's opinion in that regard, telling the district court to follow these steps. And when he followed those steps, there's only one answer that you can provide, is that it was not legally correct, and they acted in bad faith. Let me ask you another thing. What other cases are there in the entire country that interpret this language the way you would do it, or say that it's not legally correct? It would be the Humbel case, it would be the Kennedy case, and it would No, let's say that it's not legally correct. Well, there's not any others. These are the only cases that have to be Well, maybe I'm mistaking something. What I'm saying is, your position feeds off of the dicta in that case, that this doesn't appear to be legally correct. But aside from the dicta in the first Cyprus case, is there any other case around the country that so holds? No, the only other one that would come close to it is the North Cyprus versus Aetna case, where the court literally tried to prompt a discount in what Aetna had done in that situation. But there are, my point is that Humbel is distinguishable in that regard. And what I was getting at right before is, we went through five years of the Fifth Circuit telling the district court, this is exactly how you proceed. And when the district court followed that, and I believe it's law of the case, and I believe it's more judged than it is, you've got to recall that all the evidence that we had that we presented the first time up here, over in the East courtroom, was there. It didn't change one iota. The only thing that changed was the application to the Yen Network, or the lack of application to the Yen Network, and the contingency fees of $3.55 million that they had earned. The next issue is the issue of substantial evidence, and we clearly showed, I think, that there was no uniform construction of this exclusion. Because in this situation, when there were the policies, Cigna didn't pay, it kept the money. In the plans, when Cigna didn't pay, it got to keep the savings that it made off of its protocol. And like I said, that was $8.2 million and indicated the conflict of interest that they had. The next issue was the futility issue, and what we did discover in this particular case was that all of North Cyprus's claims were funneled to the SIU. They made the determination of coverage. The SIU was then involved over 12,000 occasions in telling the appellate department, uphold these appeals, don't pay any money. Then we also established, after the testimony, that there were 29 to 35 times that trial counsels sitting in this courtroom were involved. And that's a red herring, is it not? No, it's not a red herring. But involved is a very vague word, and if I read their brief correctly, they were saying that they were locating information, that that's all they were doing. In fact, I believe they even said they offered to provide their attorney notes. First Judge, that is the sword and shield of attorney-client privilege. I understand that. You're doing that after the fact. When we were in trial, when we were in trial, I made the argument that this clearly, you could infer from Exhibit No. 86, that they were involved because this is the case notes of where they were telling the appellate people how to rule. And in between each one of those were the lawyers talking to the SIU and the SIU. I raised that before. They didn't raise that argument that they would be willing to submit those in camera until final arguments. Well, it means you're a good lawyer. Well, that may be, but at the same time, Judge, if they wanted to submit those documents, they had to do that during trial. They don't get to come up on appeal and say, oh, there's really nothing in there. That is using the attorney-client privilege as a sword and a It certainly was involved. When you look at Exhibit No. 86, right in between all the instructions are the lawyers getting involved with the SIU telling the appellate division how to rule and how to uphold their adverse determinations that they had already made. All right, sir. Thank you. You have time for rebuttal. Mr. Simon. May it please the court, my name is Josh Simon and I represent Cigna. I also represented Cigna in the appeal of the Humble case, which had nearly identical facts to this one, as you pointed out, Judge Jones, and we believe controls the outcome here. Both this case and the Humble case were challenges to Cigna's response when it determines that a provider is not obligating patients to pay the co-insurance and deductibles that the Cigna health plans require to practice known as fee-forgiving. Both this case and the Humble case involve the same ERISA plan language, the same interpretation of that plan language by the same Cigna personnel, the steps that Cigna's special investigations unit took to investigate the hospitals in both cases were exactly the same, the types of evidence that Cigna collected in the course of those investigations were the same, and Cigna's response was the same. So much the same, in fact, that if you look at this court's opinion in Humble at footnote one, it says if you want a quote-unquote detailed explanation of what Cigna did in that case, you should read this court's prior opinion in this case. Judge Ellison certainly found no distinction between this case and the Humble case following a two-week bench trial. In fact, everyone involved in this case, including North Cyprus, has always understood that this case was materially the same as the Humble case. ROA 16830 is a letter from Mr. Sutter to Judge Ellison dated June 3, 2016. That's just two days after the trial court's decision in Humble, but of course, one year before the Humble trial court's decision was reversed by this court. And here is what North Cyprus had to say about Humble back in 2016. Dear Judge Ellison, this court, the Southern District of Texas, has already ruled on the issues which are currently before you in North Cyprus's dispositive motions. The rulings were handed down in Connecticut General Life Insurance v. Humble Surgical Hospital. Humble Surgical involved the same payer, Cigna Healthcare, the same fee-forgiving protocol, the application of the same plan exclusion, charges for which you are not obligated to pay, the same application of the Cigna protocol and exclusionary language to add a network claims in this city, and the same claims and defenses. What's your best argument? We understand this point. You don't need to hammer it that hard, but what's your best argument for the legal correctness of this interpretation? Sure. Because Humble says, as you know, that they don't reach that. Yeah, and that's not uncommon in this circuit. In ERISA cases, I believe Stone v. Unikow case, Howland v. Howland case we cite in our papers, Humble itself, all say you can skip the legal correctness step inquiry if you can more readily determine that there was no abuse of discretion, which is what the Humble court did. But respectfully, while this court said in the first North Cyprus opinion that there were strong arguments that the interpretation wasn't really correct, it didn't identify those arguments. And I disagree with the premise that a plan member wouldn't understand that if they reach a secret deal with their provider to waive the coinsurance and deductibles that they're supposed to pay under the terms of the plans, that they wouldn't understand that that would have some effect on the insurance coverage here. But again, legal correctness is only the first step in the inquiry. As this court made crystal clear in the McCorkle case, you know, the second step, even if it wasn't legally incorrect, is to determine whether the interpretation was an abuse of discretion that was objectively given in the Humble case in this court. And I think, you know, since the facts of this case are the same as the Humble case, the outcome has to be the same as well. That's true under any principle of stare decisis. That's true under the practices of this court, which established that a decision of one panel can only be overturned by a court, this court sitting en banc, or by the Supreme Court. And again, that's true under the abuse of discretion standard that has to be applied in this case. There's an express factual finding by the district court that all the plans that here delegate discretionary authority to Cigna. Under the McCorkle case, that means that Cigna's benefit determinations can't be set aside, even if the court disagrees with them, as long as they were reasonable. And your job here is only to assure that Cigna's interpretation falls somewhere on the continuum of reasonableness, even if at the low end. Well, now we've got nine federal judges who have all weighed in on Cigna's interpretation of this very plan language and found that it was legally correct, or at a minimum, reasonable. The district court judge in Kennedy, the three judges on the circuit panel in Kennedy, the district court judge in Arapahoe, in Colorado, Judge Ellison below, and the three judges from this court on the humble panel. Simply put, the ERISA abuse of discretion standard would be meaningless if you were to find that Cigna acted unreasonably in interpreting a plan in the same manner as nine other federal judges. Was the Kennedy case, what do I want to say, cited by Cigna the first time the appeal came up on North? It absolutely was. It was, for whatever reason, not dealt with by the first panel in this court. Well, it wasn't before them because the only real issue before them was standing. That's correct. That's the only issue they decided, Your Honor, but it was briefed. And there's an express factual finding in Judge Ellison's opinion that Cigna relied on the Kennedy case in all of its dealings with North Cyprus. What Mr. Sutter told you a few minutes ago is just simply incorrect. That's at conclusion of law, paragraph 29. And the letters that Cigna sent to North Cyprus during all of their interactions expressly cite Kennedy. So Kennedy has been the basis for Cigna's interpretation of this plan language going back further than any current Cigna employee can remember. At least as far back as 1991, when Kennedy was decided, Cigna has been interpreting this plan language as excluding coverage when a provider like North Cyprus or Humble or Kennedy fee forgives. Under Concrite v. Jones, the reasonableness of that interpretation shouldn't vary depending on whether a case is brought in the Seventh Circuit or the Fifth Circuit. And it certainly shouldn't vary depending on whether a case is assigned to the East courtroom or the West courtroom in this building. This court has already decided under almost identical facts that Cigna's fee forgiving protocol was not an abuse of discretion in Humble. And there's absolutely no reason for this court to deviate from that in this case. Unless you have any questions, we'll rely on our briefs. I was wondering what else you might have to say. I guess no more questions. Thank you. Your Honor, in response, if we just step back one moment with regard to what this court did before when it said the inquiry has to be when an ordinary plan member would believe if a coverage was conditioned on the collection of the coinsurance when it was not for in-network, etc., today I'm representing 9,921 members because I'm the assignee of their claims and their benefits. And if there was 9,921 people before the court who claimed that, which most people normally don't pay 100% of their patient responsibility amounts, were to come and find out they have no coverage and they would all be sued by the hospitals, and a lot of them put into bankruptcy and go broke because they had to pay even though they had insurance, that first step of legal correctness would not be skipped. You know, I sort of, I understand your equitable argument, but at the same time if you were making, if the company, hospital was making these side deals with the patients, that was a way of encouraging business and they assumed that they were going to get paid by the insurance company regardless. So now if they're so well-intentioned toward the patients, we know they're not going to sue them for the balance. Well, certainly some providers do. This one does not, but a lot of them do, there's no doubt about that. But at the same time, you have to look at it from... Is this fee forgiveness something that's widely attempted? No. Do you know? Well, I mean, there are a lot of ambulatory surgery centers that do it. We had a prompt pay discount and it wasn't a side... Prompt pay discount, okay. It was not a side agreement. Cigna was advised of it. Right. And they knew exactly what it was and they knew that it was based upon in-network amounts. So there was not a side deal because a side deal seems to connote that Cigna was not aware of it. Cigna was very much aware of it and paid for 22 months. Even the other court, the other panel seems to suggest that there's a waiver there because they knew our charge master rates and paid notwithstanding. But the situation is that what you can show is for two years, they didn't even know what this exclusion meant. They spent two years and dozens of people trying to figure out what does this mean and how do we apply it. And when they come and say it smacks of a genuine effort to determine benefits and that we ought to be concerned because we're not applying it well and we're going to have quote peed off customers, I won't use the word, and dig down, report them to the press and the media. They did this for two years because they did not know what that meant. And they were trying to come up with an excuse to apply it and they did it with their protocol. By the time they got to Umbl, all the evidence of the protocol wasn't there. They called it proportionate share. They took out protocol because it was so damning to their position to have that situation. And the other situation, too, if you want to distinguish Umbl, one of the things that Umbl said was there they had paid for two or three months on repricing agreements and then came in and said we're not going to pay because of Kennedy. And what this court said was instead Umbl raised the affirmative defense of this exclusion. If you look in document 220, which are the affirmative defenses in this case raised by Cigna, not one affirmative defense is there applying the exclusion. Not one. And where Umbl went off was that, hey, we have a situation here where Cigna raised an affirmative defense of the exclusion, charges which you're not obligated to pay, and then we have to apply that and see what the facts are. They did not raise it in this case. They talked about it in some of the background facts, but they never raised the affirmative defense to even get to this court to support the ruling that they won out of Umbl. And that's where Umbl went off when they said, yes, they did pay, even though they paid us for two years, they paid Umbl for two or three months. But instead of taking any action, they raised the affirmative defense and applied it. Cigna didn't do that here. Even though they switched back and forth with lawyers between firms and represented each other in this case, in these two cases, and knew exactly what was going on. So they don't have even the basis to come before this court and say, we raised the affirmative defense. It's not fair. You've got to have it. And they didn't ask for a trial amendment. They didn't do anything to include it. And they had an army of lawyers down there. We went through 10 years now of this case, and they didn't have that affirmative defense. And as Judge Ellison held in another similar case under the Legacy case, the provider under this situation cannot be held, be left holding the bag. We provided the benefits. 2,500 employees we had to pay, and we weren't paid anything. Thank you.